IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re BRIAN A. KITTS,<br><br>Debtor.<br><br>-------------------------------------------------------<br><br>**J. KEVIN BIRD, Chapter 7 TRUSTEE,**<br><br>**Appellant/Cross-Appellee,**<br><br>**vs.**<br><br>**WINTERFOX, LLC,**<br><br>**Appellee/Cross-Appellant.** | **ORDER**<br><br>**ON APPEAL**<br><br>**FROM BANKRUPTCY COURT**<br><br><br>**District Court Case No. 2:11-CV-233-TC**<br><br>Bankruptcy Case No. 05-27158 JTM (Ch. 7)<br><br>Adversary Proceeding No. 06-02250 |

In this second appeal from an adversary proceeding in the United States Bankruptcy Court,[1] the parties have filed cross-appeals from the Bankruptcy Court's Post-Remand Order concerning damages and other issues arising out of the Truth In Lending Act (TILA) action prosecuted by Bankruptcy Trustee J. Kevin Bird against Winterfox, LLC, a lender and creditor of Debtor Brian A. Kitts.  The court has appellate jurisdiction under 28 U.S.C. § 158(a).

The Trustee raises two questions on appeal.[2]  First, the Trustee challenges the Bankruptcy

---

[1]The first appeal came before this court in 2010 on the question of whether the Bankruptcy Court erred in holding that Winterfox was not liable as a matter of law under the federal Truth In Lending Act (TILA).  On appeal, this court reversed, finding liability as a matter of law, and remanded the case to the Bankruptcy Court for a determination of damages owed by Winterfox.  The bankruptcy judge then issued an order on remand, which is the subject of this appeal.

[2]In this second appeal, the Trustee initially listed three issues for appeal.  (See Amended Statement of Issues (Docket No. 1-3) at 2.)  Since then, the Trustee has withdrawn one of those issues from consideration.  (See Trustee's Opp'n to Winterfox's Mot. Partial Summ. Disposition (Docket No. 7) at 11.)

Court's decision that the Trustee is foreclosed from recovering the Trustee's asserted "invalidation remedy" because such remedy is barred by the "law of the case" doctrine.  Second, the Trustee contends that the Bankruptcy Court misapplied the lodestar method of calculating attorneys' fee awards and erred in significantly reducing the amount of the Trustee's attorneys' fees recoverable under TILA.

Winterfox raises two issues[3] on appeal.  First, Winterfox contends that the Bankruptcy Court erred when it determined that Winterfox was liable to the bankruptcy estate for $87,500 in finance charges under TILA.  Second, Winterfox asserts that the Bankruptcy Court erred in awarding the Trustee $150,000 in attorneys' fees under TILA.

For the reasons set forth below, the court AFFIRMS IN PART, REVERSES IN PART, and VACATES AND REMANDS IN PART.[4]  The decision awarding the Trustee $87,500 in finance charges under 15 U.S.C. § 1640(a)(4) is AFFIRMED.  The decision that the "invalidation remedy" was barred by the law of the case is REVERSED. And the decision reducing the award of attorneys' fees is VACATED AND REMANDED.

---

[3]Winterfox listed a third issue in its statement of issues on cross-appeal: "Did the Bankruptcy Court err in determining that the loans from Winterfox to the Debtor constituted 'high-cost mortgages' under TILA?"  (Docket No. 8 at 2; see also Docket No. 15 at 4 n.2.)  But that issue was resolved in the initial appeal before this court, and the court will not revisit it now. (See Feb. 8, 2011 Bankruptcy Court's Post-Remand Findings of Fact & Conclusions of Law at 3-4 (Appellant Appx. 508-09) (citing Aug. 26, 2010 Order on Appeal From Bankruptcy Court (Docket No. 42 in Case No. 2:10-CV-111-TC (D. Utah)) at 13).)

[4]The Trustee filed a Motion to Strike portions of Winterfox's Reply Brief.  (See Docket No. 27.)  In his motion, the Trustee requests that the court strike Winterfox's arguments set forth in sections I.A. and I.B. of the Reply Brief regarding the Invalidation Remedy and the Attorneys' Fee Award.  (Id. at 4.)  Because the Trustee prevails in this appeal on both the Invalidation Remedy and Attorneys' Fee issues, the Motion to Strike is moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Loan Transaction and Bankruptcy Petition**

On December 8, 2004, Debtor Brian A. Kitts entered into a $1.35 million, short-term high-interest loan agreement with lender Winterfox LLC (the "First Loan"). The First loan, however, was insufficient to pay off Mr. Kitts's existing obligations, so Winterfox agreed to make another short-term high-interest loan to Mr. Kitts for an additional sum to cover the shortfall. The second loan was made between December 23 and December 31, 2004, in the amount of $39,603.47 (the "Second Loan"). The First Loan and Second Loan together are sometimes referred to as the "Bridge Loan," which totaled roughly $1.39 million and was secured by a house in Park City, Utah.

Winterfox deducted $87,500 from the loan proceeds (the "Loan Origination Fee") before dispensing the funds to Mr. Kitts. In the settlement statement for the First Loan, Winterfox indicated that the Loan Origination Fee was "Paid From Borrower's Funds at Settlement." (Appellant Supp. Appx. at 592.) Winterfox did not provide any TILA-required disclosures to Mr. Kitts.

Because Mr. Kitts did not pay back the short-term Bridge Loan in the time required (in fact, he made no payments on the loan at all), Winterfox threatened to record a deed in lieu of foreclosure given in connection with the First and Second Loans. Mr. Kitts faced losing the Park City house.

In May 2005, Mr. Kitts filed a voluntary Chapter 11 petition for bankruptcy. His Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy, and J. Kevin Bird was appointed as the

Chapter 7 Trustee for Mr. Kitts's estate.  In the bankruptcy proceedings, Winterfox filed a proof of claim seeking payment of the debt owed under the mortgage loans, accrued but unpaid fees, continuing post-petition interest, costs, and attorney fees.

In the adversary proceeding, the Trustee, who was substituted as plaintiff, brought claims against Winterfox under section 1640 of TILA.  In the adversary proceeding, the Trustee contended that Winterfox violated certain disclosure requirements under TILA concerning the $1.39 million Bridge Loan and, consequently, that the bankruptcy estate was entitled to actual damages, statutory damages, attorney's fees, return of paid finance charges, and invalidation of accrued but unpaid finance charges.  The original complaint also sought the alternative remedy of rescission, but six months before trial, the Trustee elected not to pursue rescission.  (See Stipulation of Partial Dismissal at 2 (Appellant Appx. at 102) ("The parties . . . stipulate to dismiss with prejudice and on the merits that portion of the Complaint's first cause of action under the federal Truth in Lending Act that asserts any and all claims under 15 U.S.C. § 1635, including but not limited to any claim for rescission.").)

After a series of pretrial motions and proceedings, U.S. Bankruptcy Court Judge Judith Boulden conducted a bench trial.  Specific events that occurred during those proceedings are described immediately below because the U.S. Bankruptcy Court Judge Joel T. Marker, on remand, cited to them in his order interpreting Judge Boulden's decisions[5] when he held that the "invalidation remedy" was foreclosed by the "law of the case" doctrine.

---

[5]Judge Boulden retired before the damage issues were remanded, and the case was assigned to the U.S. Bankruptcy Court Judge Joel T. Marker.  Judge Marker entered the decision that is the subject of this appeal.

**B.**     **Adversary Proceeding**

1.      Striking of the Amended Complaint

After the Trustee was substituted as plaintiff in the adversary proceeding, he sought leave to file an amended complaint to, among other things, add new claims under the Utah Residential Mortgage Practices Act (URMPA) and "clarify that the Trustee seeks not only affirmative relief, but also relief in the form of objection to Winterfox's claims."  (Trustee's Mem. In Support Mot. Leave to File Amended & Supp. Compl. at 2 (Appellant Appx. at 77).)

Although Judge Boulden granted leave to amend in April 2009, the Trustee did not formally file the amended complaint until May 2009, when the motion-filing deadline had arrived.  Winterfox moved to strike the amended complaint, contending that allowing the URMPA claims would prejudice Winterfox because it would not be able to file a motion for summary judgment on the new claims.  Judge Boulden agreed and granted the motion to strike.[6]

The original complaint was reinstated.  In Mr. Kitts' Prayer for Relief in the original complaint, he sought, under his TILA claim,

> a judgment rescinding [the Bridge Loan] Agreement [and related deeds and notes]; and a judgment awarding Kitts damages in an amount to be determined by the Court; and for a judgment finding Kitts is not liable for any finance or any other charge; together with costs of this action and reasonable attorneys' fees; and such further relief as the Court deems just and reasonable.

(Compl. at 9 (Appellant Appx. at 51) (emphasis added).)

---

[6]This court affirmed Judge Boulden's decision in the first appeal. (See Aug. 26, 2010 Order on Appeal From Bankruptcy Court at 17-18 (Docket No.42 in Case No. 2:10-CV-111-TC).)

2.    Pretrial Order

Before trial, the Trustee and Winterfox submitted a stipulated pretrial order which the

Bankruptcy Court signed (the "Pretrial Order").  The Pretrial Order specified, under the heading

"Trustee's Claims," that the remedies sought by the Trustee included "return and invalidation of

all finance charges . . . which were paid by the Debtor or for which payment by the estate and

property of the estate is currently sought by Winterfox."  (Pretrial Order at 3 (Appellant Appx. at

105).)  In the "Contested Issues of Law" section of the Pretrial Order, the parties set forth the

following issue for trial:

> If TILA applies and the Trustee is entitled to relief under [15] U.S.C. § 1640[a](4)
> (which includes damages for finance charges and fees paid by the consumer), <u>can
> Winterfox nevertheless continue to enforce its claim for finance charges and fees
> that have **not yet been paid**, but for which Winterfox seeks payment</u>?

(<u>Id.</u> at 16 (Appellant Appx. at 118) (emphases added).)

3.    Motion in Limine and the "Invalidation Remedy"

In the Adversary Proceeding, the Trustee sought what he characterizes as an equitable

"Invalidation Remedy."  Under that remedy, he seeks to avoid the obligation to pay fees that have

accrued but remain unpaid on the two loans.

Before trial on the TILA claims, Winterfox filed a Motion In Limine under Federal Rule

of Civil Procedure 37 seeking exclusion of evidence (and dismissal) of TILA damage claims

because, according to Winterfox, the Trustee failed to disclose calculation of such damages on a

timely basis.  (<u>See</u> Nov. 20, 2009 Rule 37 Mot. in Limine & Mem. In Support (Adv. Proc. Dkt.

251-252) (Appellant Appx. 135-181).)

Judge Boulden considered that motion and ruled from the bench the morning trial began.

She denied the motion with one exception:

> I will allow the [Trustee] to present [his] damages claims based upon the July and the August supplements that were filed by the Trustee, but excluding, is an odd way to put it, excluding the asterisk. In the August 25th, 2009, second supplement there is a reference to interest and in the exhibit to that supplement there is a chart of actual damages for mortgage loans [the Debtor] Brian Kitts had payment from Winterfox LLC with an asterisk. That asterisk refers to the following.
>
> "If Brian Kitts is required to pay extension fees and pre and post-petition interest to Winterfox, such fees and interest will also be factored into the actual damages asserted by the Trustee." That's stricken. **There's no calculation for that**, and to the extent that the motion-in-limin[e] covers that, that portion of the motion-in-limin[e] is granted.

(Dec. 1, 2009 Trial Tr. at 9:17-10:7 (Appellant Appx. 185-186) (emphases added).)

    4. Decision on Amended Partial Objection to Proof of Claim

Soon after trial, but before Judge Boulden issued her Findings of Fact and Conclusions of Law, the Trustee filed an Amended Partial Objection to Winterfox's Proof of Claim, which Winterfox had filed in the separate but parallel bankruptcy proceeding. In the Amended Partial Objection, the Trustee asserted that

> The Debtor's estate is entitled to all remedies against Winterfox that are available under 15 U.S.C. § 1601 et seq. and, specifically, § 1640(a) including, without limitation, (a) actual damages sustained as a result of the violations in an amount to be proved, (b) statutory damages of up to [$]8,000 ($4,000 per loan), (c) reasonable attorney's fees as determined by the Court, and (d) return and invalidation of all finance charges (including interest, brokers' fees, origination fees and extension fees) paid by the Debtor, or asserted by Winterfox to be owed by the Debtor's estate, under the Loans.

(Amended Partial Objection at 4 (Appellant Appx. at 559) (emphasis added).)

Winterfox filed a motion to strike the Amended Partial Objection on the ground that it raised issues already decided in the adversary proceeding. A week after Judge Boulden

dismissed the adversary proceeding (see the discussion below about the Bankruptcy Court's final

order in the adversary proceeding), she granted Winterfox's motion and struck the Amended

Partial Objection "on the grounds that as a matter of law it is duplicative of issues that were

litigated or could have been litigated in the Adversary Proceeding."  (Appellant Appx. at 565.)

## C.        Bankruptcy Court's Final Order in the Adversary Proceeding

On January 8, 2010, Judge Boulden issued her Findings of Fact and Conclusions of Law.

(See Jan. 8, 2010 Findings of Fact & Conclusions of Law (Appellant Appx. 266-285) (hereinafter

"January 2010 Order").)  In the January 2010 Order, Judge Boulden characterized the Trustee's

claim as follows:

> The Trustee asserts that the estate is entitled [under TILA] to actual damages
> suffered by the Debtor, statutory damages of up to $4,000 per loan, attorney's
> fees, and return **and invalidation** of all finance charges related to the loans.

(Id. at 2 (emphases added).)  The judge also carefully noted that the January 2010 Order

"incorporates by reference all of the Court's oral rulings made on the record during trial. . . .  The

Court made various rulings during the trial including ruling on motions in limine.  Those rulings

as reflected on the record are incorporated into these Findings of Facts and Conclusions of Law."

(Id. at 2 n.1.)

In the January 2010 Order, Judge Boulden held that Winterfox had not complied with

TILA's disclosure requirements but that the Trustee was not entitled to relief because Winterfox

was not a "creditor" under TILA and so "TILA does not apply to the First and Second Loans."

(Id. at 18.)  Based on this threshold decision, Judge Boulden did not address TILA damages or

other requested relief.  Instead, the Bankruptcy Court dismissed the Trustee's Complaint.

**D.**     **The First Appeal and Subsequent Remand**

The Trustee appealed the Bankruptcy Court's final decision to this court.  In his Notice of

Appeal, the Trustee said he "appeals from the Order Dismissing Adversary Proceeding entered

by the Honorable Judith A. Boulden in the [Adversary Proceeding No. 06-02250] on January 8,

2010.  The Trustee's appeal includes an appeal from all interlocutory orders including,

specifically, the Order Granting Motion to Strike Amended Complaint entered on June 5, 2009."

(Jan. 21, 2010 Notice of Appeal (Appellant Appx. 286-287).)  In the briefs during the first

appeal, the parties stipulated that if the Bankruptcy Court's interpretation of two TILA terms was

incorrect, Winterfox was liable under TILA.  (See Aug. 26, 2010 Order On Appeal From

Bankruptcy Court (Docket No. 42 in Case No. 2:10-CV-111-TC (D. Utah)) (hereinafter "August

2010 Order") at 2 n.2.)

On August 26, 2010, this court reversed the Bankruptcy Court's decision and remanded

for consideration of damages under TILA.

> The court holds that the bankruptcy court's interpretation of [the TILA terms]
> "originate" and "mortgage broker" was contrary to law and so that portion of the
> decision is REVERSED.  That portion of the case is <u>REMANDED for further fact
> finding concerning damages for violation of the federal Truth in Lending Act
> (TILA) as well as the Trustee's request for attorneys' fees.</u>

(<u>Id.</u> at 19 (emphasis added).)  The court remanded for fact finding and a determination of

damages rising out of Winterfox's violation of TILA because that issue was not addressed by the

Bankruptcy Court in the January 2010 Order dismissing the Trustee's TILA Complaint.

**E.**     **Post-Remand Order**

On remand, U.S. Bankruptcy Court Judge Joel Marker (who was assigned to the case

9

after Judge Boulden retired) ordered briefing on the damages issues.  In his scheduling order, he stated that:

> post-remand briefing is appropriate concerning the following issues: (i) whether the two loans made by Winterfox to the Debtor are high-cost mortgages under 15 U.S.C. § 1602(aa), (ii) whether Winterfox made the additional disclosures required under 15 U.S.C. § 1639 pertaining to high-cost mortgages, (iii) <u>whether the Trustee is entitled to recoveries under 15 U.S.C. §§ 1640(a)(1) (actual damages), (a)(2) (statutory damages), (a)(3) (attorneys fees), and/or (a)(4) (finance charges paid by the consumer for high-cost mortgages) and, if so, in what amounts, (iv) whether Winterfox may enforce its lien claim for unpaid finance charges under the two loans;</u> and (v) any other issue presented to the Bankruptcy Court that was either not reached by the Bankruptcy Court or that was not appealed to the District Court in this matter.

(Post-Remand Scheduling Order (Adv. Proc. Dkt. No. 322) at 2-3 (Appellant Appx. 290-291) (emphasis added).)  The parties submitted competing briefs.  (<u>See</u> Winterfox's Post-Remand Br. (Appellant Appx. 293-339); Trustee's Post-Remand Reply Br. (Appellant Appx. 340-398).)

After a December 2010 hearing, the Bankruptcy Court issued its "Post-Remand Findings of Fact and Conclusions of Law" on February 8, 2011, in which it awarded the Trustee $4,000 in statutory damages, $87,500 in prepaid finance charges, and $150,000 in attorneys' fees and costs (an award substantially reduced from the requested and documented amount of $526,546.07 in fees and costs).  (<u>See</u> Docket No. 339 in Adversary Proceeding 06-02250 (Appellant Appx. 506-521) (hereinafter "Post-Remand Order").)  The court did not award actual damages under § 1640(a)(1)[7] or grant the Invalidation Remedy the Trustee sought (the Bankruptcy Court

---

[7]The Bankruptcy Court reasoned that the Trustee did not establish that Mr. Kitts detrimentally relied on Winterfox's failure to provide the required disclosures:

> The record shows that the Debtor was a relatively sophisticated consumer with a substantial history of real property loan transactions including hard-money loans, that he did not even take his glasses to the loan closing which he requires to read,

reasoned that such remedy was foreclosed by the law of the case).

**E.      The Current Appeal**

In this second appeal, the Trustee challenges a portion of the Post-Remand Order that

foreclosed the Invalidation Remedy and awarded substantially less in attorneys' fees than had

been requested by the Trustee.  The Trustee raises two issues:

> Did the bankruptcy court err when it determined that the remedy for providing for
> the invalidation of unpaid finance charges had been foreclosed by the bankruptcy
> court's prior rulings (made by a different judge, Judge Boulden), even though
> Judge Boulden preserved that remedy for trial in the stipulated pretrial order and
> admitted evidence at trial to support the remedy?

> and

> Did the bankruptcy court misapply the lodestar method, as instructed by the
> United States Supreme Court in Perdue v. Kenny A., 130 S. Ct. 1662 (2010),
> when it reduced the Trustee's recoverable attorney's fees and costs, requested
> under the fee-shifting provision of TILA, by more than $375,000?

(Appellant's Amended Statement of Issues at 2.)

Winterfox raises two issues on cross-appeal:  First, did the Bankruptcy Court err in

determining that Winterfox was liable to the Estate for $87,500 in finance charges under TILA?

And, second, did the Bankruptcy Court err in awarding the Trustee $150,000 in attorneys' fees

under TILA (Winterfox argued that $14,000 was the most that should be awarded)?  (See

Appellee Statement of Issues For Cross-Appeal (Docket No. 8) at 2.)

---

and that he and his agents expended substantial effort trying to find a lender to
prevent foreclosure but that Winterfox was the only lender that they could find to
meet their needs.

(Post-Remand Order at 6 (Appellant Appx. at 511).)  The Trustee does not appeal this portion of
the decision.

Although the parties have articulated four issues for the court's review, as a practical matter the court must decide three issues. That is, the two issues relating to the Bankruptcy Court's award of attorneys' fees are essentially different sides of the same coin.

The court will address each of the three issues in turn.

## III. ANALYSIS

### A.    "Law of the Case" Doctrine and the Invalidation Remedy

The court reviews the Bankruptcy Court's "law of the case" decision under the *de novo* standard of review. Anthony v. Baker, 955 F.2d 1395, 1397 (10th Cir. 1992).[8] See also, e.g., Saudi Am. Bank v. Shaw Group, Inc. (In re Stone & Webster, Inc.), 558 F.3d 234, 240 (3d Cir. 2009) (recognizing that because different judges were involved in drafting and then interpreting the order at issue, the court did not need to give any special deference to the interpreting judge's conclusion); Schering Corp. v. Illinois Antibiotics Co., 62 F.3d 903, 908-09 (7th Cir. 1995) (reviewing the court's interpretation of a prior order entered by a different judge under a *de novo* standard because the trial judge had no greater familiarity with the record than the appellate court and "construal of judicial opinions is a form of legal rather than factual determination"); Alley v. United States Dep't of Health & Human Servs., 590 F.3d 1195, 1202 (11th Cir. 2009) (applying a *de novo* standard of review because "[t]here is no reason to believe that a district court judge would have any advantage over the judges of this [appellate court] in interpreting an injunction issued by another district judge").

---

[8]Under 28 U.S.C. § 158(a), the court has jurisdiction to review the Bankruptcy Court's decisions in an adversary proceeding. In reviewing the decisions, the court applies the same standards of review that govern appellate review in other appellate cases. Troff v. State of Utah (In re Troff), 488 F.3d 1237, 1238-39 (10th Cir. 2007).

On remand, Judge Marker awarded damages under § 1640(a)(4) equal to the finance charges and fees that were paid, but he did not invalidate the accrued but unpaid finance charges and fees Winterfox claims under its mortgage loans.  Judge Marker determined that such relief had been foreclosed by three earlier decisions by Judge Boulden: (1) Striking of the Trustee's Amended Complaint; (2) Partial Granting of Winterfox's Motion in Limine; and (3) Striking the Trustee's Amended Partial Objection.  The Bankruptcy Court said it was "not writing on a clean slate. . . . [T]his line of argument has already been ruled upon and is the law of the case."  (Post-Remand Order at 9 (Appellant Appx. at 514).)

On appeal, the Trustee contends that the "law of the case" decision was in error because Judge Boulden preserved the Invalidation Remedy for trial in the stipulated pretrial order, admitted evidence to support the remedy at trial, and identified the remedy in her decision following trial.  The Trustee further contends that it is entitled to a declaration that invalidates any such fees and charges.  The court agrees with the Trustee for the reasons set forth below.

    1.    <u>The Law of the Case Does Not Foreclose the Trustee's Invalidation Remedy.</u>

Looking at the complete record and the context of Judge Boulden's decisions, the court concludes that the Bankruptcy Court erred in ruling that the law of the case procedurally foreclosed the Trustee's Invalidation Remedy.

    a.    *Striking the Trustee's Amended Complaint*

Judge Boulden's order striking the Trustee's Amended Complaint had no effect on the issues set for trial, including the Invalidation Remedy issue.

First, the original Complaint articulated the Invalidation Remedy.  In Mr. Kitts' Prayer for

13

Relief in the original complaint, he sought, under his TILA claim,

> a judgment rescinding [the Bridge Loan] Agreement [and related deeds and notes]; and a judgment awarding Kitts damages in an amount to be determined by the Court; and for <u>a judgment finding Kitts is not liable for any finance or any other charge</u>; together with costs of this action and reasonable attorneys' fees; and such further relief as the Court deems just and reasonable.

(Compl. at 9 (Appellant Appx. at 51) (emphasis added).)

Second, the Pretrial Order included the Invalidation Remedy as an issue for trial.  It specified that the remedies sought by the Trustee included "return and invalidation of all finance charges . . . which were paid by the Debtor <u>or for which payment by the estate and property of the estate is currently sought by Winterfox</u>."  (Pretrial Order at 3 (Appellant Appx. at 105) (emphasis added).)  And in the Pretrial Order's list of "Contested Issues of Law," the parties set forth the following issue for trial:

> If TILA applies and the Trustee is entitled to relief under [15] U.S.C. § 1640[a](4) (which includes damages for finance charges and fees paid by the consumer), <u>can Winterfox nevertheless continue to enforce its claim for finance charges and fees that have **not yet been paid**, but for which Winterfox seeks payment</u>?

(<u>Id.</u> at 16 (Appellant Appx. at 118) (emphases added).)

Here, the Pretrial Order, to which the parties **stipulated**, controlled the issues to be determined at trial.

> "When an issue is set forth in the pretrial order, it is not necessary to amend previously filed pleadings' because 'the pretrial order is the controlling document for trial."  <u>Expertise Inc. v. Aetna Fin. Co.</u>, 810 F.2d 968, 973 (10th Cir. 1987); Fed. R. Civ. P. 16(e).  As such, . . . the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim.

<u>Wilson v. Muckala</u>, 303 F.3d 1207, 1215 (10th Cir. 2002).  Winterfox signed that Pretrial Order, which superseded the original complaint and set forth issues to be tried, including the

14

Invalidation Remedy.  Accordingly, Judge Boulden's striking of the Amended Complaint did not

preclude the Trustee from pursuing the Invalidation Remedy.

        b.     *Granting In Part Winterfox's Rule 37 Motion in Limine*

Winterfox's Motion in Limine, brought under discovery Rule 37(c)(1), sought an order

prohibiting the Trustee from presenting any evidence at trial of TILA damages because of an

alleged failure to provide timely disclosure of damage calculations under discovery Rule 26(a).

In her decision, Judge Boulden only partially granted the motion in limine, precluding the

Trustee from submitting evidence of finance charges paid by Mr. Kitts if the payment was not

previously disclosed to Winterfox by the close of discovery (the "Limine Ruling").  But there

were no such undisclosed payments, because the invalidation of unpaid finance charges does not

require a calculation (and thus no disclosure) by the Trustee.  Any figure arising out any relevant

calculation was already in Winterfox's possession.

Moreover, the limited nature of Judge Boulden's Limine Ruling was clarified at trial,

during which the Trustee introduced evidence of unpaid finance charges in the form of

Winterfox's proof of claim.  When Winterfox objected to admission of the proof of claim, the

Trustee successfully argued that "we're not seeking payment of interest in affirmative relief as

damages that [have] not been paid.  What we are seeking is to avoid the obligation to pay them.

So it's only for the purpose of establishing what it is that Winterfox is seeking."  (Dec. 1, 2009

Trial Tr. at 180-81 (Appellant Appx. at 204-05).)  Judge Boulden ruled that she would "receive

the documents, but only for the limited purpose as set forth on the record."  (Id.)[9]

_____

       [9]To the extent that Winterfox inflates the effect of Judge Boulden's decision by
suggesting that the decision dismissed claims rather than excluding evidence, such a reading of

Winterfox argued at trial that Judge Boulden's Limine Ruling eliminated the Invalidation Remedy.  But Winterfox's attempt to blur the distinction between the Invalidation Remedy and damages was unsuccessful then, as it is now.  Judge Boulden admitted the proofs of claim for the Trustee's stated purpose of invalidation.  She distinguished the Invalidation Remedy from offset, remarking that "there's nothing in this Proof of Claim or in this case that deals with offset or – in fact, that was specifically excluded.  So Exhibits 4, 5, and 6+ [the proofs of claim] are received with that limitation."  (Id. at 181.)  That is, the unpaid finance charges could be invalidated upon a finding of TILA liability, but the Trustee would not be allowed to recover the contingent damages stricken by the Limine Ruling and offset them against the amounts sought in Winterfox's proof of claim.

Admission of the proofs of claim for the purpose stated on the record is consistent with all other decisions Judge Boulden made. The court can discern no other reason why such evidence would be admitted into evidence at a trial on TILA liability.[10]

      c.    *Striking the Trustee's Amended Partial Objection*

The Bankruptcy Court held that Judge Boulden "struck the Trustee's objection to Winterfox's proof of claim based on [her earlier] Amended Complaint and Motion in Limine rulings[.]" (Post-Remand Order at 9 (Appellant Appx. at 514).)  But in Judge Boulden's order, she did not specifically mention the Amended Complaint or Motion In Limine decisions.  She

her decision is inaccurate.

[10]Even if the court were convinced by Winterfox's interpretation of Judge Boulden's initial Limine Ruling, her admission of evidence to support the Invalidation Remedy shows that she amended her Limine Ruling in favor of allowing the Trustee to pursue the Invalidation Remedy.

16

wrote:

> Having reviewed Winterfox's proof of claim [Claim No. 6-3], the Trustee's
> *Amended Partial Objection to Proof of Claim No. 6-3 filed by Winterfox, L.L.C.*
> [Docket No. 153], the Motion [to Strike], Winterfox's supporting memorandum,
> the Trustee's memorandum in opposition to the Motion, Winterfox's reply
> memorandum, and having taken judicial notice of the *Complaint* and *Pretrial
> Order* in the adversary proceeding styled Bird v. Winterfox, LLC, Adv. No. 06-
> 02250 (**"Adversary Proceeding"**), and having considered the trial and other
> proceedings in the Adversary Proceeding, the Court . . . [hereby strikes the
> Amended Partial Objection] on the grounds that <u>as a matter of law it is duplicative
> of issues that were litigated or could have been litigated in the Adversary
> Proceeding</u>[.]

(Jan. 15, 2010 Order Striking Trustee's Objection to Claim of Winterfox, LLC [Claim 6-3] at 2,

(Appellant Appx. at 564) (emphasis added).)

Indeed, the Trustee cited TILA as the basis for his objection but also noted that the

adversary proceeding (still under advisement at the time the amended objection was filed) would

resolve the issue.  Later, after Judge Boulden had issued her TILA order, the Trustee recognized

on the record that the TILA portion of the amended objection was indeed resolved in the

adversary proceeding:

> On January 8, [2010], the Court issued its order dismissing the TILA claims based
> upon its determination that Winterfox was not a "creditor" as that term is used
> under TILA.  The Trustee will, therefore, proceed [in the Amended Partial
> Objection] only on the URMPA [Utah Residential Mortgage Practices Act]
> grounds.

(Trustee's Jan. 14, 2010 Hr'g Brief at 1-2 (Appellant Supp. Appx. at 608-09).)

Judge Boulden's succinct decision confirmed what the Trustee earlier recognized (and

what the record revealed).  Judge Boulden's order striking the amended objection had no bearing

on whether the Trustee was allowed to pursue the Invalidation Remedy against Winterfox.

2.    The Trustee is Entitled to a Declaration that the Estate is Not Liable to Winterfox for Accrued But Unpaid Fees and Finance Charges Existing on the Two Loans.

a.    *Winterfox's Liability under TILA is Undisputed.*

In the January 2010 Order, Judge Boulden held that Winterfox did not comply with TILA's disclosure requirements.  That decision was not appealed.

Also, in the initial appeal to this court, the parties stipulated that if this court found that Winterfox was a "creditor" under TILA, then Winterfox was liable under TILA.  That conclusion was not questioned on remand.

b.    *Requiring the Trustee to Pay Winterfox the Accrued Fees and Finance Charges Would be Inconsistent with the Remedial Nature of TILA.*

Although the Bankruptcy Court said it offered no opinion on "the substantive merits of the Trustee's position," it nevertheless reasoned that the Invalidation Remedy was not a remedy under TILA § 1640 but rather was "a declaratory attempt by the estate to 'avoid liability' for those amounts, i.e., to reduce the allowed amount of Winterfox's proof of claim."  (Post-Remand Order at 10, 10 n.36 (Appellant Appx. at 515).)  The court disagrees with the Bankruptcy Court's characterization of the Invalidation Remedy.

Under Section 1640(a)(4) of TILA, a consumer can recover damages for finance charges that have been "paid."  But invalidation of unpaid finance charges has been recognized as necessary to prevent further damages from occurring.  See Dawson v. Thomas (In re Dawson), 411 B.R. 1, 48 (Bankr. D.D.C. 2008) (holding that, by virtue of the creditor's liability under § 1640(a)(4), the consumer "will have no liability under the note for finance charges and fees . . . , not simply to recover finance charges and fees already paid.").

18

Requiring the Trustee to pay the accrued interest and extension fees sought by Winterfox would be inconsistent not only with the other remedies to which the Trustee is entitled, but also with the remedial nature of TILA and the Home Ownership and Equity Protection Act (HOEPA) (which added section 1640(a) to TILA).  It would be an illogical result to require Winterfox to return the $87,500 in finance charges (see discussion below) and at the same time require the Trustee to pay accrued interest and extension fees on the same loans.  The court agrees with the logic and reasoning of Dawson.

For the foregoing reasons, the "law of the case" decision is REVERSED and this matter is REMANDED to the Bankruptcy Court for entry of a judgment invalidating Winterfox's unpaid finance charges and fees.

**B.      $87,500 Origination Fee is Recoverable Under TILA § 1640(a)(4)**

Section 1640(a)(4) provides for damages in an "amount equal to all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material." 15 U.S.C. §1640(a)(4) (emphasis added).  The Bankruptcy Court held that "prepaid finance charges [i.e., the $87,500 origination fee] qualify as compensable damages under § 1640(a)(4)."  (Post-Remand Order at 8 (Appellant Appx. at 513).)  The Bankruptcy Court also held that Winterfox's failure to provide any TILA disclosures was material.

On appeal, Winterfox challenges the Bankruptcy Court's award, and the parties dispute the statutory meaning of "paid" and "material."  Because the issue is one of statutory interpretation (a legal question), the court reviews the Post-Remand Order decision *de novo*. Troff v. State of Utah (In re Troff), 488 F.3d 1237, 1239 (10th Cir. 2007).

19

1.    "Paid By The Consumer"

Winterfox argues that the Bankruptcy Court erred in awarding $87,500 because the

origination fee was not "paid" out of pocket, that is, Mr. Kitts did not pay the money directly out

of his personal funds.  According to Winterfox, the $87,500 is recoverable only if Mr. Kitts

suffered an actual loss.  The Trustee contends that the Bankruptcy Court properly interpreted

"paid" to include the origination fee based on the language of TILA Section 1640(a)(4) and the

governing Regulation Z (12 C.F.R. Part 226).

Regulation Z contains definitions and rules of construction for TILA terms, including

"prepaid finance charge" which is defined as "any finance charge paid separate in cash or by

check before or at consummation of the transaction, or withheld from the proceeds of the credit

at any time." 12 C.F.R. § 226.2(a)(23) (emphasis added).  The parties do not dispute that the

$87,500 was a "prepaid finance charge" as that term is defined in Regulation Z.  Mr. Kitts, at the

time of the loan, was obligated to pay back the $87,500 with interest.

But Winterfox contends that because Kitts did not make any payments on the Bridge

Loan, the $87,500 fee is not "damages."  According to Winterfox's logic, Mr. Kitts "never

actually tendered" the $87,500 and did not, in fact, pay the $87,500 to Winterfox," (see Appellee

Opening Br. at 21), so there is nothing to return.

Winterfox refers to the $87,500 as an "unpaid finance charge" and "hypothetical or non-

monetary relief"[11] and contends that it should not be required to pay the $87,500 to the Trustee

because Mr. Kitts, in bankruptcy, "received a discharge of his personal obligations to Winterfox,

---

[11]Winterfox's Reply Br. at 10-11.

[and] he will never pay any of these amounts." (Appellee Opening Br. at 21.)  Similarly,

Winterfox argues that Congress "qualified the remedy [under Section 1640(a)(4)] so that it only

applies to those amounts *actually paid*."  (Id. at 11 (emphasis in original).)

Winterfox interprets § 1640(a)(4) too narrowly.  TILA is a remedial statute (its purpose is

to protect consumers in credit transactions) that must be liberally construed in favor of the

consumer. Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) (citing Pfennig v. Household

Credit Services, Inc., 286 F.3d 340, 344 (6th Cir. 2002); Russman v. Fleet Bank Nat'l Assoc.,

280 F.3d 384, 390 (3d Cir. 2002); Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 707

(11th Cir. 1998)).  HOEPA (which added section 1640(a) to TILA) was enacted in part to prevent

a creditor's "skimming" of equity through high-rate, high-fee loans.  As the Trustee persuasively

notes,

> If finance charges had to be paid "out-of-pocket" to qualify as damages under
> § 1640(a)(4) and if unpaid finance charges could not be invalidated by virtue of a
> creditor's TILA violation, a violating creditor could make high-cost mortgages
> without giving a single disclosure and yet escape with relative impunity.  Rather
> than suffering "increased damages" as Congress intended, creditors could take a
> $2,000 slap on the wrist under § 1640(a)(2)—if the consumer was fortunate
> enough to find counsel willing to take on such a case—and still "skim" away the
> equity from the innocent homeowner by forcing him to pay (1) the "outrageous
> up-front fees" and finance charges already withheld from the loan proceeds, (2)
> the entirety of the loan balance (including the portion of the loan proceeds used to
> pay the "outrageous up-front fees"), and (3) every center of interest still owing
> under the "high-rate" loan.  But . . . the Home Ownership and Equity Protection
> Act was enacted to prevent a creditor's "skimming" of equity, which the creditor
> accomplishes by forcing the consumer to pay finance charges (including prepaid
> finance charges) on the offending loan.

(Trustee's Reply Br. at 30-31.)

2.      "Failure To Comply" Was "Material"

Arguably, Winterfox waived this issue by failing to appeal the matter within thirty days of the date this court issued its first order on remand. (See Trustee's Reply Br. at 32.)  But, even if Winterfox did not waive the issue, the court finds that Winterfox's failure to comply was material within the meaning of § 1640(a)(4).

The Bankruptcy Court held that "Winterfox's failure to provide any of the required HOEPA disclosures constitutes a material failure to comply with § 1639."  (Post-Remand Order at 9 (Appellant Appx. at 514).)  The Bankruptcy Court rejected Winterfox's argument, rightly noting that

> Winterfox merely tries to incorporate its successful argument against an award of actual damages under § 1640(a)(1) into § 1640(a)(4), but those damage provisions are cumulative and their standards are not the same.  Whereas § 1640(a)(1) is concerned with the actual monetary damages suffered by the consumer and required the Trustee to demonstrate the Debtor's detrimental reliance on Winterfox's failure to disclose, § 1640(a)(4) is concerned with the adequacy of the disclosure itself and only requires a mathematical calculation of 'the sum of all finance charges and fees paid by the consumer' to support its separate damage award.

(Id. at 9 (Appellant Appx. at 514).)  See, e.g., Jackson v. US Bank Bat'l Ass'n Trustee (In re Jackson), 245 B.R. 23, 32 (Bankr. E.D. Penn. 2000) (holding that failure to provide the pre-closing HOEPA disclosures by itself constitutes a material violation of TILA).[12]  The focus of this strict liability statute is on the disclosure requirements.  The court agrees with the

---

[12]See also 15 U.S.C. § 1602(u) (defining "material disclosures" to mean "the disclosure, as required by this subchapter, of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.").

Bankruptcy Court's interpretation of the statute that a failure to provide any disclosure was a material failure to comply.

For the foregoing reasons, the court affirms the Bankruptcy Court's award of $87,500 under § 1640(a)(4).

**C.**     <u>Attorneys' Fee Award</u>

The court evaluates the Bankruptcy Court's award of attorneys' fees for abuse of discretion. <u>Specialty Beverages, L.L.C. v. Pabst Brewing Co.</u>, 537 F.3d 1165, 1183 (10th Cir. 2008).

To begin, the court notes that the Bankruptcy Court properly awarded attorneys' fees and costs under TILA (a fee-shifting statute) to the Trustee, who prevailed on the merits of his TILA claim on appeal. <u>See</u> 15 U.S.C. § 1640(a)(3) (requiring a creditor to pay costs and reasonable attorney fees to person who brings successful action under TILA). The issue is whether the Bankruptcy Court's application of the lodestar approach in <u>Perdue v. Kenny A.</u>, 130 S. Ct. 1662 (2010), was correct and whether the Bankruptcy Court sufficiently explained the reasons for reducing the lodestar amount ($526,546.07) to $150,000. A lodestar calculation consists of "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" <u>Anchondo v. Anderson, Crenshaw & Assocs.</u>, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).

At the post-remand hearing on attorneys' fees, the following evidence was admitted for consideration: declarations, detailed billing statements, and lodestar calculations all of which showed that (after a voluntary reduction of time for matters on which the Trustee did not prevail

and an across-the-board 7% reduction) the Trustee's accrued attorneys' fees and costs were

$526,546.07.  (See Appellant Appx. at 412-505.)  Winterfox did not cross-examine witnesses

during the post-remand hearing (although some cross-examination occurred during trial), did not

challenge (much less present evidence questioning) the reasonableness of the Trustee's counsel's

billing rates, and did not present any of its own evidence contradicting the applicability or

reasonableness of the amount of fees or costs.

The Bankruptcy Court nevertheless reduced the Trustee's request for reimbursement of

fees and costs by 72%, with the following explanation:

> Based on the underlying administration of the main bankruptcy case, the relative
> complexity of the issues in this adversary proceeding, the contributions of both
> parties to the length and expense of this adversary proceeding, the Trustee's
> ultimate degree of success on the merits before the [Bankruptcy] Court and the
> District Court, and the relative billing rates of the Trustee's counsel, the Court
> finds that 750 hours is a reasonable number of hours spent in prosecution of this
> adversary proceeding at $200/hour for a total fee and cost award under
> § 1640(a)(3) of $150,000.

(Post-Remand Order at 15 (Appellant Appx. at 520).)

The Trustee appeals the reduction, contending that the Bankruptcy misapplied the United

States Supreme Court's lodestar approach set forth in Perdue v. Kenny A., 130 S. Ct. 1662

(2010).  The Trustee asserts that the full amount should be awarded because (1) the Bankruptcy

Court failed to provide a reasonably specific explanation or methodology that would permit

meaningful appellate review of the reduction (a requirement set forth in Perdue); (2) the record

did not contain any evidence that could overcome the strong presumption that the Trustee's

lodestar attorneys' fees calculation was reasonable; (3) the Bankruptcy Court improperly

considered the general administration of the main bankruptcy case in calculating the attorneys'

fee award in the adversary proceeding; and (4) the Bankruptcy Court erred by reducing the award based on the Trustee's degree of success on the merits, because that factor was already accounted for in the Trustee's lodestar calculation.

Winterfox cross-appeals, contending that the $150,000 fee award was excessive. According to Winterfox, the Bankruptcy Court should have awarded much less than $150,000 because the Bankruptcy Court erred in holding that the $87,500 origination fee was payable to the Trustee, that is, the amount of fees should be reduced even further because the Trustee's ultimate level of success on the merits of the case was minimal. Winterfox requests that if this court reverses the Bankruptcy Court's decision awarding $87,500 in damages to the Trustee, the court should remand the matter to the Bankruptcy Court with instructions to reduce the attorneys' fees accordingly.

The recent United States Supreme Court decision in Perdue controls the legal analysis of lodestar attorney fee awards under federal fee-shifting statutes.[13]  As emphasized in Perdue, the lodestar calculation is an objective one, and upon application of that methodology, "there is a 'strong presumption' that the lodestar figure is reasonable."  130 S. Ct. at 1673.  "[T]hat

---

[13]Although Perdue arises in the context of a request for an upward adjustment, or "enhancement," to the lodestar calculation, the Supreme Court emphasized that these general principles apply to all applications of the lodestar method in the context of fee-shifting statutes:

> Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case . . . .  It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement.

130 S. Ct. at 1672, 1676 (emphasis added).  See also Anchondo v. Anderson, Crenshaw & Assocs., 616 F.3d 1098 (10th Cir. 2010) (applying Perdue to a request for a reduction to the presumptively reasonable lodestar calculation).

presumption may be overcome in those rare circumstances in which the lodestar does not

adequately take into account a factor that may properly be considered in determining a reasonable

fee." Id.   But, for the most part, "the lodestar figure includes most, if not all, of the relevant

factors constituting a 'reasonable attorney's fee.'" Id.  Because the lodestar method is objective,

it "cabins the discretion of trial judges, permits meaningful judicial review, and produces

reasonably predictable results." Id. at 1672.  To ensure that the objectives just stated are met,

> [i]t is essential the judge provide a <u>reasonably specific explanation for all aspects
> of a fee determination</u> . . . .  <u>Unless such an explanation is given, adequate
> appellate review is not feasible</u>, and without such review, widely disparate awards
> may be made, and awards may be influenced (or at least may appear to be
> influenced) by a judge's subjective opinion regarding particular attorneys or the
> importance of the case.

Id. at 1676 (emphasis added).

Based on the record, the court concludes that the Trustee established a presumptively

reasonable lodestar amount.  The record contains no evidence rebutting the Trustee's calculations

or documentary support of fees and costs.  Winterfox did not challenge the reasonableness of the

hourly billing rates cited by the Trustee.  And the "success on the merits" factor emphasized by

Winterfox may not be used to reduce the proffered lodestar amount because the Trustee already

accounted for that in his calculation.  The Trustee carried his burden of showing that the rates

and hours are reasonable and, accordingly, there is a strong presumption that the $526,546.07

was the reasonable fee to be awarded to the Trustee.

But the Bankruptcy Court's decision does not provide any reasonably specific explanation

as to why the lodestar amount was reduced 72% to $150,000.  In the Post-Remand Order, the

Bankruptcy Court identified generic factors that were considered in reducing the lodestar

26

amount.[14]  But nothing in the opinion explains how each of those factors affected the fee

determination.  Because the Bankruptcy Court did not identify any methodology for determining

that only 750 hours and a $200/hour rate were reasonable, these figure appear to be "arbitrary"

and "impressionistic," a result that Perdue seeks to avoid.[15]  See Perdue, 130 S. Ct. at 1675-76.

The Bankruptcy Court did not point to specific evidence justifying why this particular

case presented the "rare" situation in which the lodestar amount was appropriately "adjusted to

account for the presence of special circumstances."  Id. at 1673.  For those reasons, the court

remands to the Bankruptcy Court for a determination[16] of whether circumstances justify any

departure from the lodestar amount (to which is attached a strong presumption of

reasonableness), and an explanation (if the Bankruptcy Court finds that a reduction is

_____

[14]The court also notes that the Bankruptcy Court incorrectly considered the Trustee's
general administration of the estate under the bankruptcy matter.  That aspect of the Trustee's job
(for which he is compensated under 11 U.S.C. §§ 328-331) is irrelevant to an action exercising
rights under TILA in a separate adversary proceeding.

[15]The court is even more puzzled by the substantial reduction because, according to the
Bankruptcy Court,

> Winterfox . . . failed to fully and honestly cooperate in the discovery process,
> refusing to provide the Trustee with such basic information as the loans' APRs
> and, most egregiously, requiring the Trustee to root out Winterfox's own
> fabrication of inaccurate and backdated TILA disclosures that it used to defend
> itself against the allegations in the [Adversary Proceeding] Complaint.
> [Accordingly,] Winterfox . . . cannot expend substantial energy obstructing the
> Trustee's efforts to advance this adversary proceeding and then be heard to
> complain now that the Trustee has succeeded in establishing its TILA violations.

(Post-Remand Order at 14-15 (Appellant Appx. at 519-20).)

[16]Because, based on the results of the Trustee's appeal, the Trustee had even more success
on the merits than was determined by the Bankruptcy Court when it initially awarded attorneys'
fees, presumably the amount of fees awarded would, at a minimum, increase.

27

appropriate) as to why and how the court arrives at an award lower than the amount sought by the Trustee.[17]

## ORDER

For the foregoing reasons, the Bankruptcy Court's February 8, 2011 Order is AFFIRMED IN PART, REVERSED IN PART, and VACATED AND REMANDED IN PART as follows:

1.    The Trustee is entitled to, and the court hereby enters, a declaration that the Invalidation Remedy bars Winterfox from collecting the accrued but unpaid interest and extension fees listed in Winterfox's proof of claim.

2.    Winterfox must pay the Trustee the $87,500 origination fee.

3.    The determination of attorneys' fees and costs to be awarded to the Trustee is REMANDED to the Bankruptcy Court with instructions to make a determination consistent with the findings in this order.

4.    The Appellant/Cross-Appellee's Motion to Strike Portions of Appellee/Cross-Appellant's Reply Brief (Docket No. 27) is DENIED AS MOOT.

SO ORDERED this 13th day of January, 2012.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge

---

[17]The Trustee seeks fees and costs incurred during this appeal.  That request must be documented and submitted to the Bankruptcy Court on remand.

28